UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:09-cr-00046-LRH-RAM |
| Plaintiff, | ORDER |
| v. | |
| GILBERTO LOPEZ-MONJARAZ, | |
| Defendant. | |

Before the Court is Defendant Gilbert Lopez-Monjaraz's ("Lopez-Monjaraz") second motion for compassionate release and to serve any remaining portion of his sentence on home confinement (ECF No. 119). The government filed a response (ECF No. 122), to which Lopez-Monjaraz replied (ECF No. 125). For the reasons articulated below, the Court denies the motion.

**I.    BACKGROUND**

In May 2009, law enforcement officers in Reno, Nevada, investigated a potential drug ring involving Lopez-Monjaraz. ECF No. 122, at 2. Officers performed a sting operation which led to the discovery of nearly 5,500 grams net weight of methamphetamine in Lopez-Monjaraz's possession at a local storage unit. *Id.*

On November 3, 2009, Lopez-Monjaraz pled guilty to possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii). ECF No. 15. On July 21, 2010, the Court sentenced Lopez-Monjaraz to 188 months in prison followed by five years of supervised release. ECF No. 20. Lopez-Monjaraz is currently in custody at FCI Oakdale II and his projected release date is December 31, 2022. ECF No. 68. Lopez-Monjaraz also has an

1

immigration detainer lodged against him and, upon release from BOP custody, he will be transferred to Immigration and Customs ("ICE") for removal back to Mexico. ECF No. 119, at 3.

On October 26, 2020, the Court denied Lopez-Monjaraz's initial motion for compassionate release because he had not exhausted his administrative remedies. ECF No. 118. Now, after exhausting his administrative remedies, Lopez-Monjaraz again seeks compassionate release and to serve any remaining portion of his sentence on home confinement because of potential complications which could occur from a COVID-19 diagnosis considering his age, high blood pressure, body mass index ("BMI"), and hypertension. ECF No. 119.

## II.   LEGAL STANDARD

Under 18 U.S.C. § 3582(c), "the court may not modify a term of imprisonment once it has been imposed," except under specified conditions. For a motion brought under § 3582(c)(1)(A)(i), those specified conditions include the exhaustion of administrative remedies or the Bureau of Prison's inaction for thirty days. The Court previously denied Lopez-Monjaraz's motion without prejudice because he failed to exhaust the administrative remedies available to him via the Bureau of Prisons. Now, the Court finds that Lopez-Monjaraz has exhausted the administrative remedies available.

18 U.S.C. § 3582(c)(1)(A) provides:

> [T]he court, . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses, for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

The relevant United States Sentencing Guidelines policy statement provides that the Court may reduce a term of imprisonment if the Court determines that:

> (1)   (A) extraordinary and compelling reasons warrant the reduction; or

>> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018). Extraordinary and compelling reasons include (1) the medical condition of the defendant, (2) the age of the defendant, (3) family circumstances, or (4) any other extraordinary or compelling reason, as determined by the Director of the Bureau of Prisons. *Id.* § 1B1.13 app. n.1.

The Court, in ruling upon a motion for compassionate release, may reduce an imposed sentence if it determines that "extraordinary and compelling reasons warrant such a reduction." In addition to this finding, the Court must also consider the sentencing factors described in 18 U.S.C. § 3553(a) to the extent that they are applicable and decide if a sentence reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

**III.    DISCUSSION**

The Court has reviewed the entirety of Lopez-Monjaraz's prison medical records and agrees that Lopez-Monjaraz faces a heightened risk of complications stemming from a potential COVID-19 diagnosis. Among other things, Lopez-Monjaraz has a high BMI, which, according to the CDC elevates his risk of serious illness should he contract COVID-19. Additionally, Lopez-Monjaraz suffers from hypertension which "might increase…risk of severe illness from COVID-19."[1] There is no dispute that these medical conditions appear to create worse outcomes for those infected with COVID-19.

Lopez-Monjaraz is serving the remainder of his sentence at Oakdale II FCI ("Oakdale II"). Currently, Oakdale II appears to have active cases of COVID-19 within the inmate population.[2] The BOP reports that there are 820 inmates at Oakdale II. Of that population, 2 inmates and 15

---

[1] CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 16, 2021).
[2] Bur. of Prisons, *COVID-19*, https://www.bop.gov/coronavirus/ (last visited Mar. 16, 2021).

staff are reportedly suffering from the COVID-19 virus. While not insignificant, the virus appears under more control at Oakdale II compared to the last few months when over 300 inmates tested positive. The Court recognizes that Oakdale II follows BOP required procedures necessary to control the spread of the virus. Still, the steps taken by BOP have not significantly reduced the spread of COVID-19 at Oakdale II when compared to other facilities nationwide.

That said, promises of the vaccine are encouraging. The COVID-19 vaccine will be administered to all federal inmates following a "tiered" prioritization schedule like that of the general population. An individual such as Lopez-Monjaraz—who is 54 years old and suffering from hypertension and a higher BMI—is considered "Priority Level 2."[3] After correctional staff receive their vaccines, Lopez-Monjaraz should be next in line. According to the CDC, as of January 15, 2021, the BOP leads all jurisdictions and Federal entities in its vaccination utilization.[4] Specifically, the BOP has administered 97 percent of all vaccine doses it has received. This is quite significant as it bucks the trend of underutilization of vaccine doses currently seen across the United States. The Court expects that inmates like Lopez-Monjaraz will receive the vaccine in the coming weeks.

Issues of the vaccine aside, the Court must also weigh whether a modified sentence is warranted under the §3553(a) factors, including whether Lopez-Monjaraz poses a danger to the community. Especially concerning to the Court is the amount of methamphetamine seized from Lopez-Monjaraz. Specifically, officers seized 5,359 grams worth which, as the government points out, falls into the highest base offense level in the Drug Trafficking Table of the Sentencing Guidelines. While Lopez-Monjaraz did not carry a firearm or commit acts of violence, drug trafficking creates permanent physical, mental, and emotional harm to the communities it touches. This is especially evident in Nevada where the two largest counties have been identified as "High Intensity Drug Trafficking Areas."[5]

///

---

[3] Bur. of Prisons, *COVID-19 Vaccine Guidance*, https://www.bop.gov/resources/pdfs/2021_covid19_vaccine.pdf.
[4] Bur. of Prisons, *COVID-19 Vaccination Efforts Commended* (Jan. 16, 2021), https://www.bop.gov/resources/news/20210116_covid_vaccine_efforts_commended.jsp
[5] DEA, HIDTA, https://www.dea.gov/divisions/hidta (last visited Jan. 25, 2021).

With these considerations in mind, the Court will deny modifying Lopez-Monjaraz's current sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The Court does not make this decision lightly: Lopez-Monjaraz's medical conditions are worrisome in the ongoing pandemic. However, on balance, these considerations are outweighed by Lopez-Monjaraz's criminal conduct and the promise of the COVID-19 vaccine. The Court finds that his current sentence reflects the seriousness of his crimes, promotes respect for the law, provides adequate punishment for his crimes, and adequately deters this conduct.

IV.     **CONCLUSION**

IT IS THEREFORE ORDERED that Lopez-Monjaraz's Second Motion for Compassionate Release (ECF No. 119) is **DENIED.**

IT IS SO ORDERED.

DATED this 17th day of March, 2021.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE